**In the Interest of K.L.W., S.F.W., and L.S.W.**

**No. ED 87463.**

Missouri Court of Appeals, Eastern District, Division Five.

Feb. 20, 2007.

Steven W. Neimeyer, St. Louis, MO, for appellant.

Christopher M. Braeske, St. Louis, Guardian Ad Litem.

Richard J. Childress, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

L.W. ("Mother") appeals from the trial court's judgment terminating her parental rights to her children, K.L.W., S.F.W., and L.S.W. (collectively, the "Children"). Mother raises four points on appeal. Because Mother's first point on appeal is dispositive, we will not address Mother's remaining points. Mother argues the trial court erred in terminating her parental rights to the Children because the trial court did not comply with Section 211.455 RSMo 2000 which requires that a meeting between the juvenile officer and the trial court occur after the filing of the petition

to terminate her parental rights. We reverse and remand.

### Facts and Procedural History

K.L.W., born on April 8, 1998, was removed from Mother's physical custody on March 18, 1999 by the Children's Division due to allegations of physical abuse. Mother signed a service plan that provided, *inter alia*, that she visit with K.L.W., obtain a psychiatric evaluation, participate in counseling and attend parenting classes. S.F.W. was born on October 5, 1999 and was removed from Mother's custody at birth due to the physical abuse of K.L.W. On December 25, 2000, K.L.W. and S.F.W. were placed back in the home with Mother to finalize reunification. On November 1, 2001, Mother successfully completed her service plan, and the court terminated jurisdiction over K.L.W. and S.F.W. On December 12, 2002, L.S.W. was born.

On or about January 22, 2003, the juvenile officer filed petitions on behalf of the three Children alleging the Children were at risk of harm and without proper care in that between October 31, 2002 and January 21, 2003, K.L.W. sustained physical injuries, including: "acute laceration to the forehead and right temporal bone," "multiple linear marks to her back," "blister to her lower lip," and "buckle shaped marks to the abdomen and right side." There were no injuries alleged with respect to S.F.W. and L.S.W. The Children's Division removed the Children on January 21, 2003. On May 5, 2003, the trial court found the allegations of abuse to be true. Mother denied the allegations. Mother signed a service plan on May 21, 2003 in substantially the same form as her previous service plan requiring her to attend individual therapy, family therapy, anger manage-

ment classes, and to see a psychiatrist and to take all medications prescribed. The record reveals, and the trial court found, that Mother made good progress towards completing the plan. On January 21, 2004, Mother was awarded unsupervised visitation with and temporary custody of the Children.

On or about June 3, 2004, the juvenile officer filed a supplemental petition alleging that Mother struck K.L.W. in the face sometime between April 2, 2004 and April 11, 2004. The trial court set the matter for a hearing on September 17, 2004. Mother denied the allegation. K.L.W. testified at the hearing. The trial court found the allegation to be true and continued jurisdiction over the Children. Additionally, the trial court changed the permanency plan to "T[ermination]P[arental]R[ights]/adoption" with a concurrent plan of reunification, restricted Mother's visits to supervised and ordered Mother to continue counseling.

The juvenile officer filed a Petition for Termination of Parental Rights as to each child on November 8, 2004. On the same date, a Children's Division social worker filed an "Investigative and Social Study of the Missouri Division of Family Services" that was completed on August 26, 2004. This report was updated on March 28, 2005, but remained substantially in the same form as the previous report, and was admitted by the trial court at trial. The court held hearings on the matter on June 14, 2005, June 30, 2005, July 22, 2005, September 15, 2005, and September 27, 2005. The trial court entered its judgment terminating Mother's parental rights on November 7, 2005.[1] This appeal follows.

---

1. The parental rights of the fathers to the Children were also terminated. They do not appeal.

## Standard of Review

 "The trial court's judgment terminating parental rights will be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *T.E.*, 35 S.W.3d 497, 501 (Mo. App. E.D.2001). Great deference is given to the trial court with respect to the credibility of witnesses, and all facts and reasonable inferences are viewed in the light most favorable to the trial court's judgment. *Id.*

## Discussion

Mother raises four points on appeal. Because Mother's first point is dispositive, we do not address Mother's remaining points. Mother alleges the trial court erred in terminating her parental rights because the trial court did not comply with Section 211.455 RSMo 2000. Specifically, she contends that a meeting between the juvenile officer and the court did not occur within thirty days after the filing of the petition to terminate parental rights and the trial court did not order a current investigation and social study. The State responds that Section 211.455 is discretionary and that Mother was not prejudiced.[2] We reverse and remand.

Section 211.455 states in pertinent part:

1. Within thirty days *after the filing of the petition, the juvenile officer shall meet with the court* in order to determine that all parties have been served with summons and to request that the court order the investigation and social study ...

3. The court shall order an investigation and social study ... The *investigation and social study shall be made* by

the juvenile officer, the state division of family services or a public or private agency authorized or licensed to care for children or any other competent person, *as directed by the court,* and a written report shall be made to the court to aid the court in determining whether the termination is in the best interests of the child. It shall include such matters as the parental background, the fitness and capacity of the parent to discharge parental responsibilities, the child's home, present adjustment, physical, emotional and mental condition, and such other facts as are pertinent to the determination. Parties and attorneys or guardians ad litem or volunteer advocates representing them before the court shall have access to the written report. All ordered evaluations and reports shall be made available to the parties and attorneys or guardians ad litem or volunteer advocates representing them before the court at least fifteen days prior to any dispositional hearing.

(emphasis added).

 In light of the Missouri Supreme Court's recent decision in *In the Interest of C.W.,* 211 S.W.3d 93 (Mo. banc 2007), we find that the requirements of Section 211.455 are mandatory. As the Missouri Supreme Court stated, use of "shall" in Section 211.455 imposes an obligation upon the court to meet with the juvenile officer after the petition is filed. *Id. See also In the Interest of C.G., C.B.G.,* 212 S.W.3d 218, 223 (2007). Additionally, the Court rejected the argument that a parent facing termination bears the burden of establishing prejudice. The Court noted, "[f]ailure to strictly comply with Section 211.455 is reversible error."

2. The State alleges that this error was not preserved for appeal because Mother did not object to the investigation study, State's ex-

hibit 4A, at trial. The record reveals otherwise.

In reaching its decision in *In the Interest of C.W.*, the Supreme Court relied upon the reasoning in *A.H.*, 169 S.W.3d 152, (Mo.App. S.D.2005). In *A.H.*, the Court of Appeals reversed a judgment terminating Mother's parental rights due to the trial court's failure to strictly comply with Section 211.455 stating:

> In this instance, there was no meeting between the juvenile officer and the court and no direction by the court regarding which agency would be assigned to investigate and prepare the report. The intent of the legislature obviously was not to relegate this decision solely to the Children's Division.

*Id.* at 158.

■ Here, the record reflects the Children's Division filed an investigative study that had been completed August 26, 2004 with its petition, which was filed November 8, 2004. The study was written by the Children's Division social worker assigned to the case. This report was subsequently updated on March 28, 2005 by the Children's Division social worker. There is no order by the trial court, minute entry, or other document in the record indicating the reason for the updated report which was admitted into evidence by the trial court as State's Exhibit 4A.[3]

The record reveals the trial court did not comply with Section 211.455 because it did not: (1) meet with the juvenile officer "within thirty days" after the juvenile officer filed the petition to terminate Mother's parental rights on November 8, 2004; (2) order an investigation and social study to determine the "parental background, the fitness and capacity of the parent to discharge parental responsibilities, the child's home, present adjustment, physical, emotional and mental condition, and such other facts as are pertinent to the determination" of the best interests of the child; and (3) order "the juvenile officer, the state division of family services or a public or private agency authorized or licensed to care for children or any other competent person" to conduct the investigation and write a written report for the court to rely upon. Point granted.

### Conclusion

The trial court's judgment terminating Mother's parental rights is reversed. The cause is remanded to the trial court with directions to hold a new trial on the petition in accordance with this opinion.

BOOKER T. SHAW, C.J., and NANNETTE A. BAKER, J., Concur.

---

**3.** This Court's review of the two reports reveals that the only material change in the reports was to question 39 on the March 2005 report. On question 39, the social worker expanded on the allegations of abuse of Mother's older two children that were no longer in her custody at the time the court took jurisdiction over K.L.W. Notably, these facts were known to the social worker at the time she prepared the August 2004 report but were not set forth in detail as she chose to do so in the March 2005 report.