362 S.W.3d 420 (2012)
In the Interest of: S.R.F. and H.L.F., Minors, M.F., Natural Mother, Appellant,
v.
G.P.F. and H.F., Petitioners/Respondents.
No. SD 31104.
Missouri Court of Appeals, Southern District, Division Two.
January 3, 2012.
*422 Bradley R. Barton, Webb City, MO, for Appellant.
Daniel P. Erwin, Joplin, MO, for Respondent.
WILLIAM W. FRANCIS, JR., Presiding Judge.
M.F. ("Mother") appeals the judgment terminating her parental rights to her minor children, S.R.F. and H.L.F. (the "Children").[1] We reverse the judgment of the Juvenile Division of the Circuit Court of Jasper County ("trial court") and remand for further proceedings.

Factual and Procedural History
The following sequence of events is relevant to the disposition of this case.
In 1993, at the age of thirteen, Mother received a closed-head injury in an automobile accident. The injury left Mother partially paralyzed on the left side of her body. As an adult, she still has some paralysis, but is able to walk. She also suffers tremors down her right arm and episodes of memory loss.
On August 14, 2007, Mother married K.F. ("Father"). They resided in Lamar, Barton County, Missouri.
On August 19, 2008, Mother gave birth to her and Father's first child, S.R.F.
On August 28, 2008, S.R.F. was removed from the parents' home and taken into the State's care based on a hotline call that S.R.F. was not receiving proper care.
On August 29, 2008, a Barton County Juvenile Officer filed a petition alleging that S.R.F. was found to be in need of care and treatment in that S.R.F. was without "proper care, custody or support[ ]" due to Mother being "physically handicapped" and unable to care for S.R.F., and Fatherthe primary caregiver"has schizophrenia and bi-polar [sic] diagnosis and is currently not taking his medications[.]" It was also reported that S.R.F. had not been clean for a period of time and that the household conditions were increasingly unsanitary. S.R.F. was subsequently placed in the home of G.P.F., her paternal grandfather, and H.F., her paternal step-grandmother ("Grandparents").
Thereafter, a social service plan was developed for Mother and Father setting forth provisions for visitation with S.R.F. and requirements that Mother and Father attend individual and couple counseling and maintain a safe and appropriate home.
On January 16, 2009, Dr. Barbara Radovanovich, of Cox Health Psychological Services, performed a neuropsychological evaluation on Mother.
In June 2009, Mother and Father moved into a two-bedroom apartment in Carthage in an effort to be closer to S.R.F., and resolve transportation issues.
On August 25, 2009, Mother gave birth to H.L.F. in Jasper County.
On August 27, 2009, H.L.F. was taken into State care by the Children's Division of the Missouri Department of Social Services for Jasper County ("Children's Division"). On the same day, Jasper County Juvenile Officer filed a petition requesting protective custody of H.L.F., alleging H.L.F.'s safety could not be assured in the *423 custody of Mother and Father. Following a protective custody hearing, the trial court placed H.L.F. with Grandparents. Barton County transferred jurisdiction of S.R.F. to Jasper County as both the Children now lived in Jasper County.
On March 3, 2010, the trial court amended the case goal for the Children "to that of adoption."
In June 2010, Father moved and no longer resided with Mother.
On June 18, 2010, Grandparents filed a "Petition for Transfer of Custody and Adoption" as to both S.R.F. and H.L.F. Grandparents alleged Mother and Father "have willfully abandoned the minor children who are six months of age or older, and/or willfully neglected to provide said minor children with necessary cars and protection substantially and continually for a period of at least six (6) months immediately prior to the filing of this Petition." Grandparents' petition did not reference any statutes. However, the allegations closely track the text in section 453.040(7).[2] Nothing in the petition alleged a ground for termination utilizing chapter 211.
On June 24, 2010, orders were issued for a home study and an appointment of a guardian ad litem.
On June 25, 2010, at a meeting between the juvenile officer and the judge, the judge determined that "proper services has [sic] been issued to all parties to this proceeding pursuant to Missouri Law[,]" and ordered that "in accordance with the provision of § 211.455.3[sic] RSMo" the Children's Division conduct an investigation and social study.[3]
On June 28, 2010, a summons was personally served on Mother.
On August 6, 2010, a progress report was filed with the trial court by Sheila Newell ("Ms. Newell"), a child service worker with the Children's Division.
On August 9, 2010, Mother and Father divorced.
On September 10, 2010, Ms. Newell filed with the trial court an "Investigative Social Summary."
On September 28, 2010, Grandparents filed an amended petition nearly identical to their original petition.
On October 12, 2010, an adoption hearing was held. At the hearing, the trial court took judicial notice of the Children's juvenile files.
Ms. Newell testified as to the reasons the Children were taken into care. Ms. Newell also testified regarding the frequency of Mother and Father's visitation and the extent of their utilization of services provided by Children's Division. Ms. Newell agreed the report of Dr. Radovanovich neuropsychological evaluation of Mother showed Mother was in the average range for intellectual functioning; her reasoning skills in regard to health, safety, and home maintenance were within the normal limit; and that her mental faculties were good. Ms. Newell testified there were concerns regarding the safety of Mother's home. Ms. Newell agreed that at the time of the hearing, Mother had a service in place to assist her with cleaning. Ms. Newell also testified that although Mother had a parent aide coming to her home to teach parenting skills, it was Ms. Newell's opinion that Mother would need *424 assistance "24/7 to parent her child[ren]."[4] Ms. Newell also testified that she did not know to what degree the Children had bonded with Mother, but that it was nothing like how the Children were bonded to Grandparents. Ms. Newell testified that the Children's Division recommended it would be in the best interest of S.R.F. and H.L.F. to be permanently in the home of Grandparents with the case goal being adoption.
Next, H.F. testified regarding the visitation arrangement with the Children. H.F. further testified about Mother's bond with the Children. She recalled that on one recent visit, the Children had taken their shoes off and Mother could not put them back on. H.F. testified Mother always tried to get the Children birthday and Christmas gifts, although the gifts were sometimes a few weeks late. H.F. testified Mother had unpacked all the boxes and had decluttered her new apartment. H.F. testified Mother's new apartment is normally clean, but on her last visitjust a week agoshe saw bugs.
At that point in the hearing, Grandparents requested leave of court to amend the pleadings "to comport with the evidence" that Mother and Father had failed to rectify the conditions that had brought the Children into State custody. Mother's counsel objected arguing that the amendment did not give counsel proper notice so as to prepare for a case under failure to rectify. Mother's counsel further added that the pleadings themselves did not include a count for termination of parental rights. The trial court granted Grandparents' motion to amend their pleadings to conform to the evidence.[5] There was no reference to any statute in this exchange or further clarification as to this amendment.
G.P.F. then testified that if he had been asked the same or similar questions as posed to H.F., he would have answered the same. He additionally testified about the condition of Mother's new apartment.
Finally, Mother testified. Mother stated she knew she could take care of the Children, and what she could not do, she would ask her friendswho are neighborsto help with babysitting, bathing the Children, and things of that nature. Mother also said she would get a babysitter who would help take care of them. Mother testified that Premier Home Health Care came to her home five days a week to clean her apartment. Mother entered into evidence three pictures, which showed the current condition of her bedroom, living room and kitchen as they "normally" appear. Mother also testified regarding her physical limitations. Mother explained the Children's Division had not really helped her with "much of anything," but acknowledged the Children's Division had provided a parent aide and made a referral for counseling. Mother additionally testified about her current financial situation, the benefits she received, and that child support payments were deducted from her monthly disability benefits. Mother testified as to the frequency of her visitation with the Children.
On December 7, 2010, the trial court entered its "Findings of Fact, Conclusions of Law and Judgment." Mother's parental rights were terminated pursuant to section *425 211.447.5(3). Specifically, the trial court found that the conditions which led to the trial court taking jurisdiction over the Children still persisted, and there was little likelihood that those conditions would be remedied at an early date. The trial court found that Mother could not meet the everyday needs of the Children such as food, clothing and bathing. This appeal followed.
Mother alleges the trial court erred in terminating Mother's parental rights pursuant to section 211.447.5(3) because clear, cogent and convincing evidence was not shown at trial and the trial court failed to make specific findings as to the four factors under section 211.447.5(3). Mother additionally claims there was no substantial evidence to support the trial court's best-interest finding. Finally, Mother contends the trial court erred in allowing Grandparents to amend their pleadings to conform to the evidence because it violated Mother's due process rights. Because Mother's final point is dispositive on this appeal, we need only address this point.[6] The primary issue for our determination is whether the trial court misapplied the law in granting Grandparents' motion to amend their chapter 453 petition, which pleaded only abandonment and neglect, to include the chapter 211 provision for termination of parental rightsfailure to rectifyprior to the testimony of Grandparents' final witness.

Standard of Review
This Court will affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. In re Adoption of C.M.B.R., 332 S.W.3d 793, 826 (Mo. banc 2011) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)). "The termination of parental rights is an awesome power that involves fundamental liberty interests associated with family and child rearing[ ]"; therefore, "we review the record very closely to ensure this awesome power was properly exercised." In re L.M., 212 S.W.3d 177, 181 (Mo.App. S.D. 2007) (internal citation omitted). "Statutes that provide for the termination of parental rights are strictly construed in favor of the parent and preservation of the natural parent-child relationship." In the Interest of K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004).

Amended Pleadings
Mother argues the trial court erred in allowing Grandparents to amend their pleadings to conform to the evidence in that it violated Mother's due process rights because the trial court terminated Mother's parental rights on the basis of her failure to rectify the harmful conditions, "where the petition to terminate was based on abandonment and/or abuse and neglect."
This case is a private action for termination of parental rights and adoption by Grandparents. "The prerequisite to any adoption is the consent of natural parents or involuntary termination of parental rights." In re Adoption of C.M.B.R., 332 S.W.3d at 806. "Prospective parents ... may request a termination of parental rights incident to an adoption action under chapter 453. Chapter 453 does not speak to termination of parental rights; rather, it authorizes adoption without consent or with consent that has the effect of terminating parental rights." Id. (internal citation omitted). Prospective parents seeking *426 adoption may also seek to terminate parental rights based on chapter 211 provisions in an adoption petition.[7]Id.; § 211.447.6.
Grandparents' petition did not reference any statute; however, the petition's language more closely tracks section 453.040(7) regarding circumstances where consent for adoption is not required based on abandonment or neglectnot the grounds for termination of parental rights based on abandonment or abuse and neglect under chapter 211.[8]Compare § 453.040(7) with § 211.447.5(1) and § 211.447.5(2). We, however, do not find this ambiguity affects the merits of Mother's argument and need not reach a conclusion on this issue. Normally, when a person alleges that consent of the parent is not required for adoption under section 453.040 (as appears to be the case in Grandparents' petition), "the statutory mandates of chapter 211 are irrelevant to the chapter 453 proceeding unless specifically cross-referenced and mandated by chapter 453." In re Adoption of C.M.B.R., 332 S.W.3d at 806-07. However, because the pleadings were amended to include termination of parental rights under section 211.447.5(3) (failure to rectify) during the adoption hearing and the judgment terminated Mother's parental rights solely based on section 211.447.5(3), the procedural mandates of chapter 211 termination cases must also be applied here. See In re Adoption of C.M.B.R., 332 S.W.3d at 807 ("[I]f the prospective parents plead termination of parental rights under chapter 211 in a chapter 453 petition, all statutory requirements for chapter 211 must be met for each chapter 211 claim.").
Relevant to this appeal is section 211.452.1(4) which specifically provides that a petition for termination of parental rights shall include the "facts on which termination is sought or grounds authorizing termination pursuant to section 211.447." "`Due process requires that the petition in a termination of parental rights case should contain allegations likely to inform those persons involved of the charges, to the end that objection may be prepared.'"[9]In re S.M.H., 160 S.W.3d 355, 366 (Mo. banc 2005) (quoting In the Interest of H.R.R., 945 S.W.2d 85 (Mo.App. W.D.1997)). Appellate courts have previously held a petition to be sufficient if it tracks the language of the statute and gives the parent adequate notice of the allegations. In re D.D.C., 351 S.W.3d at 737.
The petition in this case only sought adoption of the Children on the basis of Mother's abandonment and neglect; it did not indicate in any way that the chapter *427 211 groundfailure to rectifywould be at issue, or more specifically, that termination was sought on the basis that Mother had failed to rectify the circumstances that led to the court's jurisdiction of the Children under section 211.447.5(3).[10] Accordingly, we cannot say the petition fairly advised Mother that she would be required to defend against allegations that she had failed to rectify the conditions which led to the assumption of the Children's jurisdiction with the court, or that conditions of a potentially harmful nature continue to exist. See In re J.M.S., 83 S.W.3d 76, 87 (Mo.App. W.D.2002).
Grandparents argue this case falls under the implied consent exception to this rule. Grandparents are correct that an "exception exists to the rule that parental rights cannot be terminated on grounds not contained in the petition, where the additional grounds are tried by consent[ ]"; that rule, however, applies only where evidence bears solely on an impleaded issue and is admitted without objection. In re S.M.H., 160 S.W.Sd at 366. That is not the case here. The evidence the trial court cited regarding Mother's failure to rectify was all conceivably admitted on other issues before the trial court-namely on the court's determination of whether the adoption was in the Children's best interest. See Id.; In re J.M.S., 83 S.W.3d at 86. It is axiomatic that in adoption cases and termination of parental rights cases, the evidence as to the statutory grounds for adoption without consent or termination of parental rights are also generally relevant to the court's determination of the child's best interest and welfare. See In re Adoption of F.C., 274 S.W.3d 478, 483 (Mo.App. S.D.2008) (finding "innumerable factors ... may be considered in determining whether an adoptive placement is in the children's best interests" and that "the best-interests analysis is very fact-intensive and may turn on very subtle factors.") (internal quotation and citation omitted); In re CAM, 282 S.W.3d 398, 409 (Mo.App. S.D. 2009) (holding a trial court's best-interest determination "is a subjective assessment based on the totality of circumstances."). Thus, the implied consent rule cannot be applied here as the evidence of Mother's failure to rectify harmful conditions did not bear solely on an unpleaded issue as it was also relevant to a best-interest determination.[11]
It is also significant that Grandparents' petition sought relief solely based upon chapter 453, and not pursuant to any chapter 211 ground, as the legislature has created different rules for construing the provisions *428 of chapter 211[12] and chapter 453.[13]In re Adoption of C.M.B.R., 332 S.W.3d at 807. "Unlike chapter 453, which only discusses the best interest of the child in the construction of its provisions, chapter 211 requires a court to consider and protect both the best interest of the child and the constitutional rights of all the parties when construing its termination of parental rights provisions." Id. As such, termination, under chapter 211, provides for a number of additional procedural protections for parents before, during, and even after the hearing.[14] Thus, proceeding while parties are unclear whether a chapter 211 ground is being pursued, or adding a chapter 211 ground in the middle of an adoption hearing, presents additional challenges for ensuring all applicable statutory mandates are followed. We note this case contained a number of errors evident from a review of the record.[15] The Supreme *429 Court of Missouri has emphasized the necessity for compliance with chapter 453 provisions or chapter 211 provisions, or in some cases both. See In re Adoption of C.M.B.R., 332 S.W.3d at 806. Accordingly, Grandparents' petitionbased upon chapter 453failed to adequately advise Mother of the allegations against her under chapter 211.
We find the trial court misapplied the law in granting Grandparents' motion to amend its chapter 453 petition to include the ground for terminationfailure to rectifyas the implied consent rule does not apply here because the evidence of Mother's failure to rectify harmful conditions did not bear solely on an unpleaded issue as it was also relevant to a best-interest determination. Mother's point is granted. The judgment of the trial court is reversed and this case is remanded for further proceedings not inconsistent with this judgment.
BATES and SCOTT, JJ, Concur.
NOTES
[1] In the same judgment, the trial court also terminated Father's parental rights pursuant to section 211.447.5(2) RSMo Cum.Supp. 2008. Father is not a party to this appeal.
[2] All references to statutes are to RSMo Cum. Supp.2008, unless otherwise indicated.
[3] Because this was a petition that tracked the language of chapter 453, the obligation to report and prepare arose from that chapter and not from chapter 211. The trial court's reference to chapter 211 was incorrect.
[4] Ms. Newell admitted no referrals had been made to look into that type of assistance for Mother. Ms. Newell also testified regarding Mother's financial situation.
[5] Although the trial court granted Mother additional time to present additional evidence, it would not cure any of the procedural problems presented due to the lack of compliance with the procedural requirements of chapter 211.
[6] We offer no opinion regarding the sufficiency of evidence to support the judgment because one point is dispositive. Because this case is remanded, our decision will require the trial court to receive evidence in future proceedings.
[7] Chapter 211 is primarily utilized by state actors, that is, the division of children's services or the juvenile officer, to take children into protective custody and terminate parental rights. In re Adoption of C.M.B.R., 332 S.W.3d at 806.
[8] We, however, also recognize that grounds for termination of parental rights under section 211.447.5(1) (abandonment) and section 211.447.5(2) (abuse and neglect) are construed more broadly than abandonment and neglect under section 453.040(7). Again, for purposes of this appeal, we need not conclude whether Grandparents' petition was sufficient to give adequate notice to Mother of allegations of abandonment and neglect under section 211.447. Nevertheless, we believe a better practice (even if not required), especially for prospective parents filing under chapter 453, is to clearly delineate the statutory grounds in their respective petitions in order to fully advise parents as to what statutory grounds are asserted against them and what parents must defend against.
[9] "Our review is governed by the Juvenile and Family Court Rules. Rule 125.02 requires a petition for the termination of parental rights to conform to Rule 113.01a and section 211.452." In re D.D.C., 351 S.W.3d 722, 737 (Mo.App. W.D.2011).
[10] Grandparents' motion to amend was not made and granted until after two witnesses had finished testifying-this testimony was substantially relied upon in the trial court's finding of a ground for termination based on Mother's failure to rectify. Grandparents only called one subsequent witness.
[11] Grandparents rely on In re S.L.N., 8 S.W.3d 916 (Mo.App. S.D.2000), where this Court held that because evidence regarding neglect was presented without objection, the parent tried by consent the issue of whether termination was appropriate on that ground when the petition alleged termination on the bases of abandonment and failure to rectify and the trial court terminated on the bases of neglect and failure to rectify. Id. at 922. The basis for the Court's holding was its finding that evidence regarding the parent's neglect was "outside the statutory scope" of either the abandonment or the failure to rectify ground. Id. The Court did not state if it considered whether the neglect evidence was relevant to any of the best-interest factors. However, subsequent case law determined that such a consideration is necessary to determine whether the parent tried by consent termination on a ground not pleaded in the petition. In re J.M.S., 83 S.W.3d 76, 87 n. 6 (Mo.App. W.D.2002). We agree with this determination.
[12] Provisions in chapter 211 govern the termination of parental rights. Section 211.443 provides:

The provisions of sections 211.442 to 211.487 shall be construed so as to promote the best interests and welfare of the child as determined by the juvenile court in consideration of the following:
(1) The recognition and protection of the constitutional rights of all parties in the proceedings;
(2) The recognition and protection of the birth family relationship when possible and appropriate; and
(3) The entitlement of every child to a permanent and stable home.
[13] Chapter 453 governs the procedures for the adoption and foster care of Missouri children. In re Adoption of C.M.B.R., 332 S.W.3d at 807. Section 453.005 states that the chapter is to be construed "to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and stable home."

`[Chapter 453] is to be liberally construed with a view to promoting the best interests of the child, but such liberal construction is obviously not to be extended to the question of when the natural parents may be divested of their rights to the end that all legal relationship between them and their child shall cease and determine[.]'
In re Adoption of C.M.B.R., 332 S.W.3d at 807 (quoting In re Adoption of R.A.B., 562 S.W.2d 356, 360 (Mo. banc 1978)).
[14] For example, section 211.455 sets forth requirements including: a timeline for a service and compliance conference, requirements for the court ordered investigation and social study and its minimum content, and requires that all ordered evaluations and reports be made available to the parties at least 15 days prior to any dispositional hearing. "The requirements of section 211.455 are mandatory, and the investigation and social study must be ordered after the termination petition is filed." In re Adoption of C.M.B.R., 332 S.W.3d at 811. Additionally, section 211.459.1 provides that "[w]ithin thirty days after the juvenile officer and the court have met pursuant to section 211.455, the court shall hold the dispositional hearing where the juvenile officer and any person on whom summons and the petition were served shall have the right and power to subpoena witnesses and present evidence." Section 211.462.2 also provides that, in all actions to terminate parental rights, "[t]he parent ... of the child shall be notified of the right to have counsel, and if they request counsel and are financially unable to employ counsel, counsel shall be appointed by the court. Notice of this provision shall be contained in the summons." We also note that section 211.447 requires a number of specific findings of fact and conclusions of law; whereas, a purely chapter 453 proceeding does not require such extensive findings from section 211.447. See S.L.N, v. D.L.N., 167 S.W.3d 736, 741 (Mo. App. W.D.2005).
[15] First, section 211.455.1 states:

Within thirty days after the filing of the petition, the juvenile officer shall meet with the court in order to determine that all parties have been served with summons and to request that the court order the investigation and social study.
Here, the record reveals such a meeting occurred, but not in compliance with the statute. The trial court noted that it met with the Jasper County Juvenile Officer and "determined that proper services [sic] has been issued to all parties to the proceeding pursuant to Missouri Law." Section 211.455 requires a determination that all parties have been servednot just a determination that proper service has been issued. Mother was not served until June 28, 2010three days after the meeting. This error was further compounded by the trial court's failure to comply with section 211.459.1, requiring that within thirty days after the section 211.455 meeting, the court shall hold the dispositional hearing. The section 211.455 meeting was held on June 25, 2010. However, the adoption hearing was not held until Oct. 12, 2010more than 30 days later and there was no evidence on the record that the trial court granted a continuance. We also note that while the record reveals the court appointed Mother counsel on July 15, 2010, it is unclear from the record whether Mother's summons contained her right to counsel. Again, we note the timing of this was not compliant with the statute because Mother received her summons after the section 211.455 meeting.