

# In the Missouri Court of Appeals
## Eastern District
**DIVISION ONE**

|   |   |
|---|---|
| IN THE INTEREST OF: F.S.K., <br><br> a minor. | ) No. ED110706 <br> ) <br> ) Appeal from the Circuit Court <br> ) of Jefferson County <br> ) Case No. 20JE-JU00055 <br> ) <br> ) Honorable Joseph A. Rathert <br> ) <br> ) Filed: February 21, 2023 |

Mother, C.R., and Father, A.K., appeal the judgment entered by the Circuit Court of Jefferson County terminating their parental rights to the minor child, F.S.K., and thus clearing the way for the child's adoption by Prospective Adoptive Parents, C.E. and J.E.

We find that while Prospective Adoptive Parents pled termination of parental rights pursuant to chapter 211, and while the juvenile court rendered findings in accordance with that chapter, the court failed to order and obtain an investigation and social study after filing of the termination petition as required by section 211.455.3 RSMo. (2016).[1] Instead, the court relied on a five-year-old investigation and social study from a separate proceeding in terminating Mother's and Father's parental rights. The failure to investigate and submit a report after filing of the

---

[1] Statutory references to sections 211.443, 211.455, and 453.005 are to RSMo. (2016). All other statutory references are to RSMo. (Supp. 2022).

petition, as mandated by section 211.455, is error that requires reversal of the judgment terminating the parental rights of Mother and Father.

Therefore, we reverse and remand. On remand, the juvenile court shall order compliance with the investigation and reporting requirements of section 211.455 before retrial on the claims in the petition as they pertain to termination of Mother's and Father's parental rights under section 211.447.

Factual and Procedural Background

F.S.K. was born July 15, 2014. Mother has two older children who were taken into protective custody and placed in foster care a few months earlier although the older children were again in Mother's physical care for a trial home visit at the time of F.S.K.'s birth.[2] An investigator with Children's Division ("the Division") visited Mother in early August 2014 when F.S.K. was three weeks old. The Division had received reports from hospital staff concerned about the welfare of, and lack of care for, Mother's two older children at the time of F.S.K.'s birth. Law enforcement had also notified the Division about a lack of electricity in the home. F.S.K.'s pediatrician was unable to reach Mother, and had not seen F.S.K. since she left the hospital shortly after birth.

The Division investigator found F.S.K.'s body covered with a deep red rash, and her buttocks and genitals appeared bright red and raw. J.E. later would observe that the child's skin was peeling from her buttocks, neck, and behind her ears, and emitting a foul-smelling discharge. Mother theorized that F.S.K. might be allergic to her formula. The investigator instructed Mother

---

[2] A.K. is not the biological father of Mother's two older children, and Mother's parental rights as to her older children are not at issue in this appeal.

to take F.S.K. to the urgent care that day because of the severity of F.S.K.'s rash, but Mother did not do so. The next day, the Division obtained an order from the juvenile court placing F.S.K. in the protective custody of the Division based on medical neglect, removed F.S.K. from Mother's home, and placed F.S.K. in foster care with Prospective Adoptive Parents, C.E. and J.E. The child, who was seven years old at the time of trial and judgment, has lived with Prospective Adoptive Parents since she was three weeks old.

In the years following F.S.K.'s birth, Mother and Father participated in social service plans, wherein they underwent psychological evaluations, counseling, parenting courses, anger management assessments, in-home services, and supervised visits with F.S.K. and the older children. Father also completed a batterers' intervention program, and drug screens. The working relationship between Mother and Father, on the one hand, and the family support team, juvenile court, visitation supervisors, and Prospective Adoptive Parents and their counsel, on the other, was rancorous and contentious, with Mother and Father accusing everyone involved with the child or the case of showing bias, lying, suborning perjury, falsifying reports, committing professional misconduct, coaching the child and her siblings to lie, abusing the child and her siblings, and altering photographs.

Finding that Mother and Father had failed to address the issues that brought the child into care four years earlier, despite exhaustive efforts by the Division's contracted social services agency, the court changed the child's permanency plan from reunification with Mother and Father to guardianship with Prospective Adoptive Parents in July 2018. The court issued letters of guardianship of the child to C.E. and J.E. With visitation no longer ordered by the juvenile court, evidence adduced at trial showed that Mother's and Father's visits and communication with F.S.K. was compromised, and ceased shortly after the court granted guardianship to

3

Prospective Adoptive Parents because of acrimony between the parties and Mother and Father's refusal to provide information to the Prospective Adoptive Parents. The evidence adduced at trial showed that Mother and Father did not visit with, communicate with, or support the child once the guardianship was in place.

In January 2020, eighteen months after obtaining guardianship of the child, Prospective Adoptive Parents filed a two-count petition to terminate the parental rights of Mother and Father and to grant adoption of F.S.K. Prospective Adoptive Parents pled that Mother and Father abandoned the child and failed to rectify harmful conditions, but the petition did not invoke any specific statutory provision on which Prospective Adoptive Parents sought to rely. Neither the Division nor the Juvenile Officer were made parties to the petition, neither entity was served, and neither entity participated in the trial to terminate parental rights. The record contains no indication that the court met with the Juvenile Officer within 30 days of the petition filing, pursuant to section 211.455.1. At no time after the filing of the petition to terminate parental rights did the court order an investigation and social study as required under section 211.455.3.

The juvenile court tried Count I of the petition—termination of parental rights—in September 2021. The parties made clear they were proceeding only on the termination of parental rights claim, and were not proceeding on the adoption on that date. Mother, Father, C.E., J.E., and the guardian *ad litem* testified, as did Sara Allison, an independent social worker who prepared an adoption home study for Prospective Adoptive Parents. In preparing the adoption home study in April 2021, Ms. Allison visited the home of Prospective Adoptive Parents, and interviewed them regarding their personal history, circumstances, and desire to adopt the child. Ms. Allison did not meet with Mother or Father, and did not review their history or circumstances. Over the objection of Mother and Father, the court admitted into evidence Ms.

4

Allison's adoption home study as Exhibit 4. The court later admitted into evidence, without objection, a termination of parental rights study prepared in August 2016 and last amended in October 2016 (Exhibit 31). The guardian ad litem recommended termination of parental rights.

The juvenile court found that Mother and Father failed to contribute to F.S.K.'s financial support, and made no effort to have a relationship with her. The court further found "that the conditions that led to the assumption of jurisdiction still persist and that the conditions of a potentially harmful nature continue to exist." Referring to the 2016 "Termination of Parental Rights Study, per 211.455 RSMo.," the court stated that it "accepts into evidence the Termination of Parental Rights Study as set out in Exhibit 31 that was admitted into evidence." The court then found that termination of parental rights was in the child's best interest. The court made no findings regarding consent to the adoption, and no findings that consent to the adoption was not required of Mother and Father.

The court entered judgment terminating the parental rights of Mother and Father based on abandonment of the child. Mother and Father sought a new trial on multiple grounds, including statutory deficiencies in the investigation and social study. The juvenile court denied the motion for new trial. This appeal follows.

Discussion

Mother and Father raise eight points of juvenile-court error on appeal. Grouped together, Mother and Father claim the juvenile court erred in its denial of their motion for new trial, admission of the home study prepared by social worker Sara Allison, and reliance on a then-pending criminal harassment case against Mother. They also challenge the court's conclusions that Mother and Father failed to remedy harmful conditions, made no real effort to remedy

5

harmful conditions, and abandoned the child, and that termination of parental rights is in the child's best interest.

*Standard of Review*

This Court reviews whether clear, cogent, and convincing evidence supports a statutory ground for terminating parental rights or supports a finding that a parent's consent is not necessary for adoption pursuant to section 453.040. *In re T.T.G.*, 530 S.W.3d 489, 493 (Mo. banc 2017); *In re M.N.V.*, 630 S.W.3d 829, 835 (Mo. App. E.D. 2021). Under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), we will affirm the lower court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *T.T.G.*, 530 S.W.3d at 493; *M.N.V.*, 630 S.W.3d at 835.

In determining whether termination of parental rights is in the child's best interest, the standard of proof at trial is a preponderance of the evidence, and the standard of review on appeal is an abuse of discretion. *T.T.G.*, 530 S.W.3d at 493.

*Analysis*

We proceed with Point II as it is dispositive of the appeal. In their second point, Mother and Father challenge the juvenile court's reliance on the report prepared by Ms. Allison (Exhibit 4) in reaching its decision to terminate Mother's and Father's parental rights. They contend that "a termination of parental rights study must conform to Section 211.455.3 RSMo. in that termination of parental rights should not be based on a cursory study of the adoptive parents but should be based on the conditions of the natural parents and the natural family." Mother and Father further argue that the termination of parental rights study prepared by a private social service agency in 2016, admitted as Exhibit 31 and cited by the juvenile court in its judgment, is

6

stale. This point is dispositive, and renders moot Mother's and Father's seven other points on appeal.

This case is a private action for termination of parental rights and adoption. The United States Supreme Court long has recognized that the relationship between parent and child is among the oldest constitutionally protected fundamental rights and liberty interests. *M.N.V.*, 630 S.W.3d at 836. As a result, a prerequisite to any adoption is either the consent of the biological parents or involuntary termination of their parental rights. *In re C.M.B.R.*, 332 S.W.3d 793, 806 (Mo. banc 2011) (*abrogated on other grounds by S.S.S. v. C.V.S.*, 529 S.W.3d 811 (Mo. banc 2017)); *M.N.V.*, 630 S.W.3d at 836.

Without referring to any statutory section, Prospective Adoptive Parents in this case sought termination of parental rights in Count I. They allege two grounds: (1) Mother and Father abandoned the child; and (2) the child "has been under the jurisdiction of the juvenile court for a period of one year and the conditions which led to the assumptions (sic) of jurisdiction still persist, [and] there is little likelihood that the conditions will be remedied at an early date so that the child can be returned to [Mother and Father] in the near future[.]" The petition pled no additional facts to support or elaborate on the bare allegation that Mother and Father abandoned the child. In connection with the second ground for termination, Prospective Adoptive Parents further pled that Mother and Father failed to comply with their respective social service plans and failed to adjust their circumstances to provide a proper home for the child, despite the efforts of the Division and Juvenile Officer to assist them. The petition language for the second ground for termination closely tracks the termination of parental rights statute, namely section

7

211.447.5(3), commonly referred to as "failure to rectify harmful conditions."[3] Both abandonment and failure to rectify harmful conditions are grounds for termination of parental rights. Section 211.447.5. We therefore review the termination of parental rights as a request based under chapter 211.

Chapter 211 speaks to the termination of parental rights. The chapter is used primarily by state actors, either the Children's Division or the Juvenile Officer, to take children into protective custody and terminate parental rights. *C.M.B.R.*, 332 S.W.3d at 806. Prospective adoptive parents, however, may seek to terminate parental rights based on chapter 211 provisions in an adoption petition. Section 211.447.6.

Prospective adoptive parents also may request a termination of parental rights incident to an adoption action under chapter 453. *C.M.B.R.*, 332 S.W.3d at 806. In Count II, without

---

[3] Section 211.447.5(3) RSMo. (Supp. 2022) provides:

5. The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:

***

(3) *The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future*, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control[.]

Emphasis added.

referring to any statutory provision, petitioners sought to adopt F.S.K., alleging that Mother and Father abandoned the child. "Chapter 453 does not speak to termination of parental rights; rather, it authorizes adoption without consent or with consent that has the effect of terminating parental rights." *Id*. Chapter 453 sets out exceptions to when a parent's consent to the adoption is required. However, Prospective Adoptive Parents did not plead that consent from Mother and Father to the child's adoption was not required, nor did they plead that they sought termination of parental rights incident to their adoption of the child under chapter 453.[4]

In this case, Prospective Adoptive Parents pled in Count I a right to termination of parental rights on grounds set forth in chapter 211, namely abandonment and failure to rectify harmful conditions. In Count II, they sought adoption of the child, which is covered by chapter 453, but did not plead that parental consent to the adoption was not required, thus lending support to the proposition that termination of parental rights was sought under chapter 211.[5] Consequently, we find that Prospective Adoptive Parents sought termination of parental rights under chapter 211 in Count I of their petition.

As a result, both chapters 211 and 453 apply to this case. *Id*. Normally, when an adoption petition alleges that consent of the parents is not required for an adoption under section 453.040, the statutory mandates of chapter 211 are irrelevant to the chapter 453 proceeding unless specifically cross-referenced and mandated by chapter 453. *Id*.; *In re S.R.F.*, 362 S.W.3d 420,

---

[4] Count II of the petition does not pray for adoption of the child. The concluding paragraphs of Count II state:

> Accordingly, it is the opinion of this Court that it is fit and proper that the adoption be approved since the welfare of said minor person so demands.
> Therefore, it is ordered and decreed that from the date of this decree, said minor person, [F.S.K.], for all legal intents and purposes, be the child of [J.E]. and [C.E.] and that the name of said minor person be and is hereby changed (to be determined).

[5] At trial, the parties agreed to proceed only on the termination of parental rights and not on the adoption at that time.

426 (Mo. App. S.D. 2012). Here, however, Prospective Adoptive Parents did not plead that parental consent to the adoption was not required. When, as we find here, prospective adoptive parents plead termination of parental rights under chapter 211 in a chapter 453 adoption petition, they must meet all statutory requirements for chapter 211 for each chapter 211 claim. *C.M.B.R.*, 332 S.W.3d at 807. All statutory requirements were not met in the present case.

"Section 211.455 mandates an investigation and written report after a petition to terminate parental rights is filed under chapter 211 to help the court determine if termination is in the best interest of the child." *Id*. at 810-11. Section 211.455 provides in pertinent part:

> 1. Within thirty days *after the filing of the petition*, the juvenile officer shall meet with the court in order to determine that all parties have been served with summons and to request that the court order the investigation and social study.

> ***

> 3. The court *shall* order an investigation and social study except in cases filed under section 211.444 [applicable when parents have consented to termination of their rights, consented to a specific adoption, or waived consent to adoption]. The investigation and social study shall be made by the juvenile officer, the state children's division or a public or private agency authorized or licensed to care for children or any other competent person, as directed by the court, and *a written report shall be made to the court* to aid the court in determining whether the termination is in the best interests of the child. *It shall include such matters as the parental background, the fitness and capacity of the parent to discharge parental responsibilities, the child's home, present adjustment, physical, emotional and mental condition, and such other facts as are pertinent to the determination*. Parties and attorneys or guardians ad litem or volunteer advocates representing them before the court shall have access to the written report. All ordered evaluations and reports shall be made available to the parties and attorneys or guardians ad litem or volunteer advocates representing them before the court at least fifteen days prior to any dispositional hearing.

Emphases added.

The requirements of section 211.455 are mandatory. *Id*. at 811; *In re K.L.W.*, 214 S.W.3d 401, 403 (Mo. App. E.D. 2007). In addition, the court must order the investigation and social study after the petition to terminate parental rights is filed. *C.M.B.R.*, 332 S.W.3d at 811. "When

10

a court fails to strictly comply with applicable provisions of chapter 211, the failure constitutes reversible error." *Id*.; *K.L.W.*, 214 S.W.3d at 403.

In this case, the record gives no indication that the court met with the Juvenile Officer within thirty days after the petition was filed as required by section 211.455.1, nor was the juvenile officer joined as a party. The court was then required to order a section 211.455 investigation and social study. Here, the court did not order an investigation and social study as required by section 211.455.3. No written report of the investigation and social study was prepared and filed *after* filing of the petition before the court terminated parental rights under section 211.447. Instead, the court admitted into evidence Exhibit 31, an investigation and social study prepared in August 2016 for a different proceeding, five years prior to trial. The court's judgment refers to Exhibit 31 expressly for purposes of section 211.455.

Prospective Adoptive Parents argue that Ms. Allison's report (Exhibit 4) is sufficient as it conformed to the adoption investigation, or home study, required in adoption cases. Section 453.070.1 requires "a full investigation, which includes an assessment of the adoptive parents … and any other pertinent information relevant to whether the child is suitable for adoption by the petitioner and whether the petitioner is suitable as a parent for the child …." But this argument is unpersuasive because the case invokes termination of parental rights under chapter 211 in addition to adoption under chapter 453, making relevant the statutory mandates of chapter 211. Termination of parental rights hearings under chapter 211 and adoption hearings under chapter 453 may proceed simultaneously before the same judge. *C.M.B.R.*, 332 S.W.3d at 822. Nevertheless:

> The quality of the adoptive home is not a part of the termination inquiry; rather, the focus is on the natural parent's interactions and relationship with the child. The issue of termination must be considered first in contested chapter 453 adoptions to avoid

confusing the quality of the adoptive home with the grounds for terminating parental rights.

*Id.* (internal citations omitted).

The different requirements under chapters 211 and 453 are significant. The Missouri legislature has created different rules for construing the provisions of chapters 211 and 453. *Id* at 807. Courts are to construe liberally chapter 453 "to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and stable home." Section 453.005; *C.M.B.R.*, 332 S.W.3d at 807. On the other hand, chapter 211 governs the termination of parental rights. A court's failure to strictly comply with applicable provisions of chapter 211 constitutes reversible error. *Id.* at 811. "Unlike chapter 453, which only discusses the best interest of the child in the construction of its provisions, chapter 211 requires a court to consider and protect both the best interest of the child and the constitutional rights of all the parties when construing its termination of parental rights provisions."[6] *Id.* at 807.

Thus, the requirements for an adoption home study under section 453.070 differ from the requirements of a termination of parental rights investigation and social study under section 211.455. The adoption home study submitted in this case was just that, an adoption home study assessing the background and fitness of Prospective Adoptive Parents. The purpose of the report mandated by chapter 453 is to provide the trial court with adequate information to determine

---

[6] Section 211.443 RSMo. (2016) states:

The provisions of sections 211.442 to 211.487 shall be construed so as to promote the best interests and welfare of the child as determined by the juvenile court in consideration of the following:
 (1) The recognition and protection of the constitutional rights of all parties in the proceedings;
 (2) The recognition and protection of the birth family relationship when possible and appropriate; and
 (3) The entitlement of every child to a permanent and stable home.

whether the child is suitable for adoption and whether it is in the best interest of the child to finalize adoption. The adoption home study did not address the background of Mother and Father or their fitness and capacity to discharge their parental responsibilities as required for an investigation and social study under section 211.455.3. The adoption home study likewise did not assess the child's "present adjustment, physical, emotional and mental condition, and such other facts as are pertinent to the determination" to terminate parental rights. Section 211.455.3. Nor does chapter 453 require this assessment in an adoption home study. Given their different requirements and functions, submission of an adoption home study cannot substitute for strict compliance with section 211.455 in a termination of parental rights case brought under chapter 211.

We are sympathetic and cognizant of the impact this case has had, and the uncertainty and anguish caused the child, Mother, Father, and Prospective Adoptive Parents over the years. We cannot, however, ignore what the statute requires, nor what the Supreme Court mandates in *C.M.B.R.* This opinion should not be read as addressing the merits of termination of Mother's and Father's parental rights, the fitness of the Prospective Adoptive Parents to adopt F.S.K., or the suitability of the adoption. Our opinion simply instructs that all statutory requirements be followed by the juvenile court as mandated by law to ensure all parties have a full and fair trial.

Because Prospective Adoptive Parents sought termination of Mother's and Father's parental rights under section 211.447, the juvenile court was required to order a section 211.455 investigation and social study after the petition to terminate parental rights was filed. *C.M.B.R.*, 332 S.W.3d at 810-11. The court in this case, however, did not do so. No investigation and social study were conducted after filing the petition to terminate parental rights, and no written report setting forth the results of such investigation and study was made to the court prior to its

13

termination of Mother's and Father's parental rights under section 211.447.5. The requirements of section 211.455 are mandatory. *Id*. at 811; *K.L.W.*, 214 S.W.3d at 403. The juvenile court committed reversible error when it failed to follow the mandates of section 211.455.

## Conclusion

The judgment of the juvenile court terminating the parental rights of Mother and Father is reversed because of the juvenile court's failure to comply with section 211.455. Because we reverse the judgment for failure to comply with section 211.455 mandating investigation and reporting, the entire judgment is reversed as to all findings pertaining to Mother and Father, including the juvenile court's findings of abandonment and failure to rectify harmful conditions.

The case is remanded for compliance with section 211.455 and then a new trial, at which Prospective Adoptive Parents, Mother, and Father will have the opportunity to present evidence on all claims of the petition regarding termination of parental rights. On remand, the juvenile court shall compel expeditious compliance with the investigation and reporting requirements of sections 211.455. Further, the juvenile court is ordered to set the trial date no more than 90 days after the reports have been received, and to proceed expeditiously in rendering a final judgment.

_____
Angela T. Quigless, P.J.


Sherri B. Sullivan, J., and
Robert M. Clayton III, J., concur.

14