160 S.W.3d 435 (2005)
In the Interest of M.W.S., Plaintiff.
Juvenile Officer, Respondent,
v.
K.R.C.S. (Mother), Appellant.
No. WD 64390.
Missouri Court of Appeals, Western District.
April 19, 2005.
*436 Christena L. Nelson, Hallsville, MO, for appellant.
Jane M. Bezler, Columbia, MO, for guardian.
Melissa McAllister, Columbia, MO, for respondent.
Before BRECKENRIDGE, P.J., LOWENSTEIN and HARDWICK, JJ.
LISA WHITE HARDWICK, Judge.
K.S. (Mother) appeals from a judgment terminating parental rights to her son, M.S. We affirm the judgment, finding clear, cogent, and convincing evidence in the record to support the termination on grounds of abuse and neglect under Section 211.447.4(2). RSMo.2000.

FACTUAL AND PROCEDURAL HISTORY
Mother gave birth to M.S. on January 15, 2002. At that time, the natural father of M.S. was incarcerated.[1] M.S. was taken into protective custody on the day after his birth because Mother had pending termination of parental rights cases on her other two sons, ages 2 and 3. As in the pending cases, the juvenile officer alleged that M.S. was in need of protection because Mother had chronic head lice, unsanitary and unstable living arrangements, and was unable to provide the care and treatment necessary for an infant or young child. In February 2002, Mother consented to the termination of her parental rights on the two older children.
The Division of Family Services (DFS) developed a treatment plan with the goal of reunifying Mother with M.S. Mother agreed to the plan, which required her to maintain stable housing, work with "parent aid services," attend the Life Skills Class and therapeutic counseling sessions, and *437 attend her son's medical appointments. DFS also arranged for Mother to have weekly, supervised visits with M.S.
By April 2003, a DFS case worker reported that Mother had a minimal bond with M.S. due to the infrequency of the visits, Mother's non-responsiveness to M.S. during the visits, and the fact that Mother was not his primary caregiver. Mother was never able to progress beyond the weekly one-hour visits with M.S. because she failed to establish a stable living environment where the necessary parenting skills could be taught and practiced. Mother also failed to regularly attend her counseling sessions and M.S.'s medical appointments.
In December 2002, Dr. Stephanie Reid-Arndt conducted a neuro psychological evaluation of Mother. After noting Mother's "longstanding history of limited cognitive abilities," Dr. Reid-Arndt concluded that she was "currently functioning in the mildly mentally retarded range of general intelligence." Testing indicated that although Mother was able to memorize information and repeat it back, her ability to apply such knowledge in "real-life" situations was severely limited. The evaluation report stated that, as a result of her mental deficiencies, Mother lacked the basic functional skills for independent living and self-care. Recommendations were made that Mother receive on-going case management services and the appointment of a public conservator or guardian to assist in handling her personal affairs. Given Mother's inability to manage her own needs, the report expressed serious concern about her parenting ability and the safety of a minor dependent in her sole care.
In June 2003, upon recommendation from DFS, the juvenile officer filed a petition to terminate Mother's parental rights to M.S. Following a trial, the circuit court granted the termination on grounds of abuse and neglect, Section 211.447.4(2), and the failure to rectify conditions of a potentially harmful nature, Section 211.447.4(3). Mother appeals, contending the termination grounds are unsupported by clear, cogent, and convincing evidence.

STANDARD OF REVIEW
A trial court can terminate parental rights only if the grounds for termination are supported by clear, cogent, and convincing evidence. In the Interest of M.D.R., 124 S.W.3d 469, 476 (Mo. banc 2004). Clear, cogent, and convincing evidence is that which instantly tilts the scales in favor of termination when weighed against the evidence in opposition; and the finder of fact is left with the abiding conviction the evidence is true. In the Interest of A.S.W., 137 S.W.3d 448, 453 (Mo. banc 2004).
We will affirm the trial court's decision to terminate parental rights unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court misapplies or erroneously declares the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Conflicting evidence will be reviewed in the light most favorable to the trial court's judgment. A.S.W., 137 S.W.3d at 452-53. Where the trial court finds multiple grounds for termination, any one of those grounds is sufficient to sustain the judgment on appeal. In the Interest of N.R.W., 112 S.W.3d 465, 469 (Mo.App. 2003). To affirm, we must find that at least one of the termination grounds in Section 211.447 was proven by clear, cogent, and convincing evidence. In the Interest of C.C., 32 S.W.3d 824, 826 (Mo.App. 2000).

POINTS ON APPEAL
In Points I and II, Mother contends the evidence was insufficient to support the *438 termination of her parental rights under Section 211.447.4(3) for failure to rectify conditions of a potentially harmful nature. In Point III, she challenges the sufficiency of the evidence to support the termination of her rights for abuse and neglect under Section 211.447.4(2). Because we find clear, cogent, and convincing evidence in the record to support the termination on the ground of abuse and neglect, we need not address the first two points.
In terminating Mother's parental rights under Section 211.447.4(2) for abuse and neglect, the circuit court found Mother has a permanent mental condition that renders her unable to provide for the necessary care, custody, and control of M.S. Mother contends the court's finding is erroneous because there is no evidence that she abused or neglected M.S. as a result of a mental condition.
Section 211.447.4(2) allows for termination of parental rights for abuse and neglect when a permanent mental condition renders a parent unable to knowingly provide the child the necessary care, custody, and control. This provision requires a showing of more than mere emotional instability or mental problems; the incapacity must be so severe that it causes the parent to be incapable of providing minimally acceptable care, and the condition cannot be reversed or improved in a reasonable time. In the Interest of S.M.H., 160 S.W.3d 355, 2005 WL 589995 (Mo. banc March 15, 2005).
Contrary to Mother's argument on appeal, a termination of parental rights under Section 211.447.4(2) does not require proof that the child has actually suffered abuse or neglect as a result of the parent's mental condition. The statutory purpose of allowing terminations in such circumstances is to protect the child from the unavoidable adverse consequences of a parent's mental illness. In the Interest of C.P.B., 641 S.W.2d 456, 460 (Mo.App. 1982). Terminations on account of mental illness can be ordered when it is shown by clear, cogent, and convincing evidence that the child is being harmed or is likely to be harmed in the future, if the parental relationship is continued. Id.
Three factors should be analyzed in determining whether a mental condition warrants termination of a parent's rights: (1) documentationwhether the condition is supported by competent evidence; (2) durationwhether the condition is permanent such that there is no reasonable likelihood that it can be reversed; and (3) severity of effectwhether the condition is so severe as to render the parent unable to knowingly provide the child necessary care, custody and control. In the Interest of K.A.W., 133 S.W.3d 1, 14 (Mo. banc 2004). The record contains ample evidence to support the circuit court's consideration of these factors.
The juvenile officer presented medical documentation of Mother's mental condition based on a neuropsychological evaluation by Dr. Stephanie Reid-Arndt. Mother was diagnosed as having mild mental retardation with a "longstanding history of limited cognitive abilities." Her cognitive limitations included the inability to read or write, and significant difficulty with comprehension and learning new skills. Based on the neuropsychological testing and a previous evaluation by the Missouri Department of Mental Health, Dr. Reid-Arndt concluded that Mother's mental retardation impaired her ability to successfully function in an independent living environment. The collective evaluations reported that Mother demonstrated *439 poor judgment[2] in grooming, managing her medications, self-directing her daily activities, and in making decisions about her living arrangements, employment, and finances. Given that Mother's mental condition was unlikely to improve, Dr. Reid-Arndt recommended that she receive on-going case management services and that a conservator or guardian be appointed to assist her in handling medical decisions, finances, and other personal business matters.
Dr. Reid-Arndt concluded that Mother's inability to care for herself raised serious concerns about her ability to manage the needs of a minor dependent. The neuropsychological evaluation included questioning about Mother's basic knowledge of parenting skills. Despite having attended parenting education programs over the course of several years through her treatment plans with DFS, Mother was unable to explain what types of feeding would be appropriate for M.S. as an infant or toddler. The evaluation reported that Mother "did not appear to have a good understanding of the care that her young son would require."
During testimony at trial, Dr. Reid-Arndt further explained the basis for her concern that Mother would be unable to function as a responsible parent:
Q: Based on your testing and evaluation, do you have an opinion as to whether [Mother] would be capable of bearing the responsibility of parenthood, and be able to insure the safety of her child?
A: I have concerns. As I said, I think this evaluation needs to be looked at in the context of her functioning at home. And based on that information, I have significant concerns.
* * *
Q: Do you have an opinion as to whether [Mother's] diagnosis may affect her parenting ability?
A: I have definite concerns that they would. Particularly in terms of her cognitive functioning.
Q: And what do you mean by that?
A: As I indicated in my report, I think that she has some significant cognitive limitations, and I think that sometimes with some support it's possible that people can parent effectively. My concern is that it seemed that that support had been given, and she was still having significant difficulties managing her own self care.
The testimony and report of Dr. Reid-Arndt was sufficient to document that Mother had a permanent condition of mental retardation that rendered her unable to knowingly provide for the necessary care, custody, and control of M.S. Although there was no evidence that Mother had actually abused or neglected M.S., the record provides clear, convincing, and cogent evidence that the child would likely be harmed in the future if the parental relationship continued. In addition to Dr. Reid-Arndt's testimony, there was evidence concerning Mother's actual abuse and neglect of her two older children as a result of her mental illness.
Mother's oldest son, M.C., was removed from her home at the age of nine months. In March 2000, he was found to be abused and neglected due to unsanitary living conditions, inadequate housing for the rearing of a child, threats to his life by Father (who had an extensive criminal record), *440 and injuries to the child resulting from improper supervision. Mother's second son, G.S., was also removed from the home at the age of one month for failure to thrive. He was returned to Mother's care briefly and then removed a second time for failure to thrive. G.S. had severe diaper rash and was reported by his attending doctor to be in imminent danger. Mother consented to the termination of her parental rights to M.C. and G.S. based on these abuse and neglect allegations.
A parent's past abuse of other siblings is evidence of a home environment that is currently dangerous to the child for whom termination is sought. In the Interest of J.K., 38 S.W.3d 495, 503 (Mo.App. 2001). In determining that Mother was incapable of providing the necessary care, custody, and control of M.S., the circuit court could reasonably consider the undisputed abuse and neglect suffered her two other young sons. We find no error in the termination of Mother's parental rights to M.S., as the evidence supported the grounds alleged under Section 211.447.4(2).
The circuit court's judgment is affirmed.
All concur.
NOTES
[1] The natural father, G.S., later consented to termination of his parental rights to M.S. and is not involved in this appeal.
[2] As a prime example of her poor judgment, Mother admitted to having sex on multiple occasions with her 16-year old brother-in-law during the pendency of this case. Mother plead guilty to statutory rape and was on probation at the time of trial on her termination of parental rights.