IN the INTEREST OF: T.T.G. and
S.S.G., W.J.K. and C.A.C.K.,
Respondents,

v.

K.S.G., Appellant,

and

G.H., et al., Respondents.

No. SC 96153

Supreme Court of Missouri,
en banc.

Opinion issued October 5, 2017

The mother was represented by Christopher Nease, Megan Roth and Elizabeth Fessler of Shook, Hardy & Bacon LLP in Kansas City, (816) 474-6550; her guardian ad litem was Daniel Berezoski of Husch Blackwell LLP in Kansas City, (816) 983-8265.

The prospective adoptive parents were represented by Sarah H. Ginther, an attorney in Liberty, (816) 217-9998.

The twins' guardians ad litem were Catherine Wiehl and Claire M. Terrebonne of Jackson County CASA in Kansas City, (816) 842-2272.

The juvenile officer was represented by Darren Korte of the juvenile office in Kansas City, (816) 435-4725.

Laura Denvir Stith, Judge

K.S.G. ("Mother") appeals from a judgment terminating her parental rights to her twin girls, T.T.G. and S.S.G. ("the twins"). The circuit court concluded termination was proper on numerous grounds under section 211.447.5.[1] Mother appeals, challenging, *inter alia*, the sufficiency of the evidence to support the circuit court's finding that grounds for termination under section 211.447 were satisfied. Assuming a ground for termination is supported by the record, Mother does not challenge that termination is in the twins' best interests.

This Court will affirm a judgment terminating parental rights if any one of the grounds on which termination was granted is supported by clear, cogent, and convincing evidence. *In re P.L.O.*, *131 S.W.3d 782, 788 (Mo. banc 2004)* (citations omitted). For the reasons set out below,

---

1. All statutory references are to RSMo Supp. 2013, unless otherwise noted.

this Court finds the record supports termination on the ground of neglect under section 211.447.5(2). Under section 453.040, Mother's consent to the adoption is not needed where, as here, one of the grounds for termination under section 211.447 is satisfied. This Court affirms the judgment without reaching the other issues raised.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Court views the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment. *In re Adoption of C.M.B.R., 332 S.W.3d 793, 801 (Mo. banc 2011); Rule 73.01(c).* Viewed in that light, the facts are as set out below.

Mother is the biological mother of five children and has been involved with the children's division of the Missouri Department of Social Services since 2012. She was hospitalized at Truman Behavioral Health, a facility providing psychiatric care, at the time she gave birth to the twins in April 2015. The children's division removed the twins from Mother immediately after birth due to concerns surrounding Mother's mental health and her failure to remain medically compliant with her mental health medication. Six weeks later, the twins were placed in foster care with W.J.K. and C.A.C.K. ("foster parents"). A week thereafter, the circuit court took jurisdiction of the twins.

The initial plan was reunification of Mother with the twins. Mother's three older children already were in foster care and had been under the circuit court's jurisdiction since 2012. Since that time, the children's division has offered services to Mother, including psychological evaluations, urinalysis drug testing, and parent aide services to include one-on-one services, parenting skills training, therapeutic services, and supervised visitation.

Mother's participation in these services continued after the twins' birth and placement in foster care, and also included individual and group therapy and voluntary drug testing. The record shows, however, that even though Mother was receiving one-on-one parenting training, Mother's visits with the twins were inconsistent and not fully successful. Mother struggled with having age-appropriate expectations of the twins and also had difficulty bonding with them; the twins instead bonded with their foster family. Mother also tested positive for marijuana, opiates, and amphetamines while participating in voluntary drug testing. Her drug use was especially problematic because, as discussed further below, she suffered from serious mental health issues and an IQ putting her in the mildly mentally retarded range.

On January 12, 2016, the foster parents filed a petition under section 453.040 to terminate Mother's and Father's parental rights as to the twins and to adopt the twins. The foster parents alleged Mother's consent for adoption was not required pursuant to section 453.040(7) because she had abandoned or neglected the children, and further that grounds for termination were shown under section 211.447.5(1), (2), (3), (6)(a), and (6)(b).[2]

In April 2016, a year after the twins' birth, Mother's lack of progress caused the circuit court to determine reunification no longer was in the twins' best interests and to enter an order providing: "The permanency plan is termination of parental rights and adoption.... Reasonable efforts have included identification of an adoptive

---

**2.** Father has been absent from the twins' life since their birth. He was not present at trial and did not contest termination of his parental rights nor challenge that termination was in the best interests of the twins.

resource and case management services. Other reasonable efforts have included encouraging the mother to participate in mental health treatment and authorized services per previous Court orders." The circuit court ordered services for Mother to continue, including supervised visits for her and the twins' maternal grandmother, individual therapy, random urinalysis, and continued drug treatment.

In the meantime, the three older children's foster parents also filed a petition for adoption and for termination of Mother's parental rights, alleging abandonment of the children for six months without good cause under section 211.447.5(1), abuse or neglect under section 211.447.5(2), failure to rectify conditions that led to jurisdiction over the children under section 211.447.5(3), and parental unfitness under section 211.447.5(6). The petition also alleged Mother's consent to adoption was not required because she abandoned or neglected the children under section 453.040(7). A bench trial was held on the petition to terminate Mother's rights as to the older children while the adoption petition as to the twins still was pending. Following the bench trial, in August 2016, the circuit court involuntarily terminated Mother's parental rights as to her three older children under all of the alleged grounds for termination. Mother did not appeal that judgment.

The adoption petition as to the twins came to trial three months later, in November 2016. Without objection, the circuit court took judicial notice of all five children's juvenile division records, along with the case files and contents of the adoption and termination of parental rights proceeding involving the older three children. At trial, the evidence revealed, as part of her involvement with the children's division, Mother received two psychological evaluations, one in 2012 and one in 2015,

both of which indicated pervasive and ongoing mental illnesses, specifically schizoaffective disorder and adjustment disorder, combined with low IQ scores. Those psychological reports also indicated Mother abused cannabis, which was consistent with Mother's failed drug tests. By the time of trial, Mother had stopped drug testing and stopped participating in individual therapy.

The children's division, the twins' guardian ad litem, and the juvenile office recommended terminating Mother's parental rights. In December 2016, the circuit court found by clear, cogent, and convincing evidence that grounds for termination had been established for neglect under section 211.447.5(2), failure to rectify under section 211.447.5(3), parental unfitness under section 211.447.5(6)(a), and the unrebutted presumption of unfitness due to a prior involuntary termination under section 211.447.5(6)(b)(a). It further found Mother's consent to adoption was not necessary under section 453.040(7) because she had neglected or abandoned the twins in the six months preceding the petition for adoption. Additionally, the circuit court found termination and adoption to be in the twins' best interests. *See § 211.447.6; § 453.005.* Accordingly, the circuit court terminated Mother's parental rights and approved the foster parents' adoption of the twins. Because Mother alleges the presumption of unfitness set out in section 211.447.5(6)(b) is unconstitutional, she appealed directly to this Court. *Mo. Const. art. V, sec. 3.*

## II. STANDARD OF REVIEW

■ Termination of parental rights under section 211.447.5 requires "the trial court [to] find by clear, cogent, and convincing evidence that one or more grounds for termination exists under subsections 2, 3 or 4 of section 211.447." *P.L.O., 131*

*S.W.3d at 788.* "Proof under this standard of only one of the statutory grounds alleged is sufficient to sustain the judgment." *Id. at 789.*

 This Court reviews whether there was clear, cogent, and convincing evidence to support a statutory ground for terminating parental rights and to support a finding that consent is not necessary for adoption under section 453.040 under the standard of review set forth in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976):

> [T]he trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong.

*Id. at 32; see also In Interest of J.P.B.,* 509 S.W.3d 84, 90 (Mo. banc 2017); *C.M.B.R., 332 S.W.3d at 819.* "In all of these determinations, the reviewing court is deferential to the fact-findings of the trial court and considers all the evidence and reasonable inferences from the evidence in the light most favorable to the judgment." *P.L.O., 131 S.W.3d at 789* (citations omitted). This Court gives the same amount of deference to the circuit court's determinations in adoption and child custody proceedings as it does in all other civil cases. *Ivie v. Smith, 439 S.W.3d 189, 199 n.9 (Mo. banc 2014).*

 Once one of the grounds for termination has been shown under section 211.447, the circuit court also must consider whether termination is in the best interests of the child. *P.L.O., 131 S.W.3d at 789.* Proof that termination is in the child's best interests must be shown at trial by a preponderance of the evidence. *Id.* This Court will reverse a determination that termination is in the best interests of the child when there is an abuse of discretion. *Id.* Here, however, Mother does not challenge the circuit court's determination that terminating her rights was in the twins' best interests if a ground for termination has been shown.

## III. THE RECORD SUPPORTS TERMINATION OF MOTHER'S PARENTAL RIGHTS UNDER SECTION 211.447.5(2) FOR NEGLECT

### A. Relevant Statutes

Chapters 211 and 453 provide two separate means by which a parent's rights may be involuntarily terminated. *C.M.B.R., 332 S.W.3d at 806.* Chapter 211 is primarily used by state actors, such as the children's division or the juvenile office, while chapter 453 allows prospective parents to request termination incident to an adoption and is more frequently used in a private action for termination. *Id.* Under section 453.040(7), consent of the natural parent for adoption is not required if the child has been abandoned or neglected as defined in that section. And although chapter 453 does not directly "speak to termination of parental rights," *id.*, section 211.447.9 provides, "[i]n actions for adoption pursuant to chapter 453, the court may hear and determine the issues raised in a petition for adoption containing a prayer for termination of parental rights filed with the same effect as a petition permitted pursuant to subsection 2, 4, or 5 of this section." Under section 453.040(8), consent is not required of a "parent whose rights to the child may be terminated for any of the grounds set forth in section 211.447."

This action was filed by the foster parents under section 453.040 seeking to adopt the twins and alleging grounds for

termination existed under section 211.447 and neglect was shown under section 453.040(7), so consent of the parents was not required under section 453.040.[3] Although the circuit court found clear, cogent, and convincing evidence of numerous grounds for termination, this Court focuses on the finding of neglect under section 211.447.5(2). Because this Court finds the record supports termination, it does not reach Mother's allegations that the circuit court erred in terminating her parental rights under sections 211.447.5(3), (6)(a), and (6)(b)(a), her allegation that section 211.447.5(6)(b)(a) violates her due process rights by creating a presumption of unfitness of a parent based solely on a prior termination of that parent's rights as to a different child, her allegation that neglect was not shown under section 453.040(7), or her allegation that the circuit court misstated the findings necessary under section 211.447(3).

## B. There Is Clear, Cogent, And Convincing Evidence Mother Neglected The Twins

■ The record contains clear, cogent, and convincing evidence to support termination of Mother's parental rights pursuant to section 211.447.5(2). Section 211.447.5(2) permits a court to terminate parental rights if the child has been neglected. *See also J.A.R. v. D.G.R., 426 S.W.3d 624, 630 (Mo. banc 2014).* Section 211.447.5(2) also sets out certain matters the court must consider and on which it must make findings before it determines whether neglect has been shown:

(2) ... In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's

---

**3.** Section 453.040(7) provides consent is not required if:

(7) A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him [or her] with necessary care and protection[.]

This Court does not separately analyze whether neglect was shown as defined in section 453.040, as there are grounds for termination under section 211.447.5(2), and therefore consent is unnecessary because a parent whose rights have been terminated under section 211.447 is no longer the child's parent and, therefore, no longer must consent. *See § 453.040(8); § 211.447.9.*

physical, mental, or emotional health and development[.]

 The circuit court considered and made findings as to the presence of the four factors listed in section 211.447.5(2), and it found there was no evidence of physical, emotional, or sexual abuse under factor (c), but there was evidence of factors (a), (b), and (d). The circuit court found the evidence supportive of each of these factors provided clear, cogent, and convincing evidence Mother had neglected the twins. The juvenile officer and the foster parents agree. Mother disagrees the evidence supports termination under any one of these four factors. Both of these arguments, incorrectly assume the circuit court must find clear, cogent, and convincing evidence of the presence of one or more of the four factors (a) through (d) independently to support termination. To the contrary, as this Court recently reaffirmed, "there is no statutory requirement that a factor listed under a ground for termination be proven by 'clear, cogent, and convincing evidence;' rather, that burden of proof applies to the ground for termination." *J.P.B., 509 S.W.3d at 92* (citation omitted); *accord In re B.H., 348 S.W.3d 770, 773 (Mo. banc 2011)* (section 211.447.5(2) "does not require that any specific statutory condition or act be proven by 'clear, cogent and convincing evidence' in order to terminate an individual's parental rights"). Factors (a) though (d) "are simply categories of evidence to be considered along with other relevant evidence, rather than separate grounds for termination in and of themselves." *In re*

K.M.C., III, 223 S.W.3d 916, 923 (Mo. App. 2007); see also In re K.A.W., 133 S.W.3d 1, 16 (Mo. banc 2004).[4]

Here, the circuit court found factors (a), (b), and (d) and other evidence supported termination for neglect under section 211.447.5(2). Neglect is defined in section 210.110(12) as "failure to provide, by those responsible for the care, custody, and control of the child, the necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for the child's well-being[.]" *See also J.A.R., 426 S.W.3d at 630.* The record provided clear, cogent, and convincing evidence of neglect under this standard.

In considering factor (a), the circuit court found Mother suffers from a mental condition that renders her unable to provide the twins with the care, custody, and control they need. Mother has undergone two psychological evaluations. Mother's first psychological evaluation was in June 2012, just four months after Mother's three older children were placed in foster care. The psychologist diagnosed Mother with schizoaffective disorder and adjustment disorder with disturbance of conduct. Schizoaffective disorder, according to the psychologist, made this case "guarded because [s]chizoaffective [d]isorder is a serious and persistent mental illness which can worsen as a person matures." At the time of this 2012 report, Mother experienced hallucinations that would direct her to hurt herself and others. The report also stated Mother suffers from a pervasive intellectual deficit. Her scores on the Wechsler Adult Intelligence Scale revealed mild

---

4. Failure of the circuit court to make any of these findings does not itself provide a basis for reversal. The party appealing must object at the trial level to the failure to make a finding so the circuit court has an opportunity to correct the error. *Rule 78.07(c).* In the absence of objection, the failure to make such required findings is waived and does not itself

provide a basis for reversal or remand when the evidence supports one or more grounds for termination despite the lack of such findings. *J.A.R., 426 S.W.3d at 646 n. 5; see also C.M.B.R., 332 S.W.3d at 813.* In any event, here, the circuit court did make findings on all four factors.

mental retardation, and her educational scores were at an elementary school level. The psychologist declined at that time to medically diagnose her with mild mental retardation only because he was unable to determine how much her intellectual deficit was affected by the disruptive effects of her mental illness. The psychologist recommended Mother start medication for her mental health issues, stay medically compliant, and establish a relationship with an individual therapist.

Mother had a second psychological evaluation by a different psychologist in July 2015. At that time, Mother was medication compliant and residing at The Oaks, a group home mental health facility. Many of the same tests were performed. The results were consistent with the first evaluation, although the analysis was less comprehensive because Mother was uncooperative. The psychologist found the testing was sufficient for him to provide a dual diagnosis of "[m]ild intellectual disability" and "at the very least ... a bipolar disorder with psychotic features, possibly schizoaffective or schizophrenic."[5] The psychologist also found Mother had a "full-scale IQ of 65" and believed this deficit and her mental disorders together might cause her to "be a danger to herself, in addition, to being a danger to her children, due to being too impaired to parent properly."

In addition to psychological evaluations, Mother participated in psychiatric care at both Truman Behavioral Health and ReDiscover. Mother had attended ReDiscover since she was 14 years old and Truman Behavioral Health since 2011. Hospital records show a history of hospitalizations, failure to maintain safe living outside of the hospital, inability to stay medically compliant outside of the hospital, and a lack of communication with outpatient providers. The hospital records also report Mother has "a history of experiencing auditory and visual hallucinations, isolating from others, refusing to eat, becoming agitated and aggressive, spending recklessly, having speech that is unclear and illogical at times, and is unable to focus."

Mother's therapist, in a report dated July 2016, commended Mother's progress and her determination to get her children back but reported, "it is questionable whether she can effectively care for [the twins] due to concerns related to her cognitive functions." Mother's clinical case manager at ReDiscover noted in a July 2016 report that Mother "struggles at times expressing her thoughts/stressor/concerns and often becomes irritated and compulsive" but believed continued progress was likely and later testified that, at the time of trial, Mother was medically compliant and proactive in getting her own apartment, paying bills, obtaining food, and being drug tested. Finally, Mother's social service worker assigned to the family on behalf of the children's division, in a July 2016 report, recommended terminating Mother's parental rights to the twins based on the worker's observations, since 2013, that Mother had failed to progress in services enough to achieve reunification, and Mother's "mental health is a barrier for reunification" and regaining custody was not feasible in the near future.

In addition to the evidence of Mother's mental health problems, the circuit court found, when considering factor (b) concerning whether the parent has a chemical dependency, that Mother for some time

---

**5.** While Mother contends the 2015 mental examination was insufficiently recent to support termination itself, this Court is not considering Mother's mental health issues as a separate basis for termination but rather as evidence relevant to consider in determining whether she neglected the twins under section 211.447.5(2).

was participating in drug treatment programs at ReDiscover three days per week and voluntarily submitting herself to regular drug testing. But the court also found Mother tested positive for marijuana five times from October 2015 to June 2016 and for opiates and amphetamines four times in October and November 2015.[6] Mother claimed she had stopped using drugs other than marijuana after these tests, yet she stopped attending drug testing after moving into independent living in July 2016 and testified she had used marijuana just weeks before the November 2016 trial and on other occasions. These failed tests are consistent with a finding by the first psychologist that Mother abused cannabis.

The circuit court found there was no evidence of factor (c) abuse, but there was evidence supporting factor (d) that Mother "repeatedly and continuously failed, although physically or financially able, to provide the [twins] with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the [twin's] physical, mental, or emotional health and development."

 Here, the circuit court found Mother "failed to provide financial support or necessities for the care of the minor children." In her interrogatory answers, Mother responded she had provided "none" when asked how much support she contributed to the twins. The testimony and other evidence introduced revealed Mother lived in a group home mental health facility immediately after the twins' birth in April 2015 until July 2016. During that time, she provided no support for the twins. From July 2016 until trial in November 2016, Mother made two child support payments of $105 each for all of her children together. So far as the record shows, these two payments are the only payments of any kind Mother made toward support of her children. "The financial support of a minor child is a continuing parental obligation, and a parent has a duty to contribute as much as he or she can." *In re Adoption of C.M., 414 S.W.3d 622, 656 (Mo. App. 2013)* (internal quotation and citation omitted).

The record also shows Mother never provided the social worker assigned to the family with any gifts, cards, or letters for the twins, or with necessities such as clothes, shoes, diapers or food. It shows, during the year and one half the twins were in the care of the foster parents, Mother provided a total of three outfits for the twins and provided no direct financial support or necessities of any other kind to the foster parents. The social worker assigned to the family testified Mother had not provided any meaningful support for the twins since their birth.

This evidence supported the circuit court's finding that Mother failed to provide more than *de minimis* support for the twins. The record also would have permitted the circuit court to find she could have provided at least some additional support. More specifically, the record showed Mother received disability checks of $849 per month. She testified somewhat inconsistently that she paid most or all of her check to the group home and had no extra money to pay for the care of her children while residing there, and also that she had money left over after paying to live at the group home and further had some money saved before she went to the group home. She also testified that, if she were given custody of the twins, her disability check would be sufficient for her to support herself and the twins, yet she made only the two noted payments prior to the trial. Further, in the August trial involving Mother's three older children—of which the court in

---

6. Mother had two false positives for opiates in April 2016.

the twins' case took judicial notice—Mother testified her disability payments had been enough to support and provide for her children, yet she failed to do so. It was up to the circuit court to determine which, if any, part of Mother's testimony it found credible, and it found she was able to financially provide some support. While Mother notes she did provide at least some support for two months and a small number of outfits and diapers, "[t]he court may attach little or no weight to infrequent visitations, communications, or contributions." § 211.447.8.

The circuit court also made findings concerning Mother's failure to provide the kind of visitation and support necessary for the twins' mental, physical, and emotional health and development. It noted Mother was granted visitation with the twins from the time they came into the circuit court's jurisdiction until trial, but Mother often came to her visits with the twins without making even the most basic preparations to provide items they would need. Sometimes she provided supplies such as food, clothes, diapers, wipes, a diaper bag, and a few toys for use during their visits. But on other occasions, the parent aide would have to bring these items for the twins to visits because Mother was unpredictable and inconsistent in supplying the items needed.

The most recent parent aide supervising Mother's visits testified Mother was unable to care for both twins simultaneously due to her limited capacity and so had to have separate visitation with each child on different days each week. Mother's visits were inconsistent; sometimes she would stay for the entire visit, but other times would cut the visit short. She rejected one parent aide's request to increase visit time with the twins and never asked for longer visitation. This, and similar evidence, led the circuit court "to believe that the mother would not be able to handle a set of twins full-time while supporting the family."

The parent aide believed Mother needed to be more affectionate with the twins and worked with her to improve in this area. Mother did make progress in parenting, but she remained inconsistent in her visitation. Some visits continued to end early because Mother became overwhelmed. Mother also still struggled to appropriately comfort the twins, often getting frustrated with the twins when they would cry. The parent aide, not Mother, would often comfort the twins when they became upset during visits.

Additionally, once Mother moved into her own apartment, she skipped most of her visits with the twins. After making a few visits at the beginning of August 2016, Mother showed up for only one of her scheduled visits in September, October, and November 2016. Further, although it was Mother's responsibility to schedule visits, she did not do so once she moved out of the group home, forcing the parent aide to initiate contact to try to schedule visits. ReDiscover records indicate Mother admitted she was unsure if she wanted to visit with the twins just a month before trial. Mother testified she missed visits because, once in an apartment, she "needed to find resources and assistance." Yet the record revealed no evidence Mother in fact found additional resources or assistance, while it did show she had failed to attend most of her scheduled visits with the twins. It was within the circuit court's discretion to determine whether Mother made reasonable efforts to provide support and whether she could have provided more financial, emotional, and other support. § 211.447.8; see also In re Adoption of W.B.L., 681 S.W.2d 452, 455 (Mo. banc 1984) ("The trial court is in an especially advantageous position to determine the in-

tent of a parent-witness in an adoption case."). This Court will not second-guess that determination.

In *B.H.*, this Court affirmed the circuit court's finding of clear, cogent, and convincing evidence of neglect under section 211.447.5(2) based on the evidence of factors (a) through (d) considered together. *348 S.W.3d at 773-74*. *B.H.* found factors (a), (c), and (d) supported termination, even though there was no evidence of (b). *Id.* Specifically, this Court held the mother's mild mental retardation impaired Mother's ability to reason, especially regarding parenting. *Id. at 774*. It also found abuse under subsection (c). *Id.* Finally, this Court found Mother repeatedly failed to provide the necessary care for her child's development because the child suffered anxiety because of the abuse suffered while in Mother's control. *Id.* Accordingly, this Court found clear, cogent, and convincing evidence of neglect when considering the evidence relating to the section 211.447.5(2) factors. *Id.*

Just as in *B.H.*, the factors here, considered together, provide clear, cogent, and convincing evidence of neglect. The evidence showed the twins were taken from Mother at their birth in April 2015 and have been in foster care ever since. Mother has ongoing, permanent, and pervasive mental diseases and cognitive impairments that make it difficult for her to handle even supervised visits with the twins, much less the duties of a parent. She has a history of hallucinations and of failing to take her medications, as well as use of illegal drugs. She has failed to either financially or emotionally support the twins despite the circuit court's finding that she was able to provide more assistance, and has given only token in-kind contributions of food and clothing. She has provided no gifts, cards, toys, or other presents to the twins.

This evidence, as well as the other evidence detailed above and at the trial, provided clear, cogent, and convincing evidence Mother neglected the twins by failing to provide for their care, custody, and control, or the necessary support, nutrition or medical, surgical, or any other care necessary for the twins' well-being, and supports termination of her parental rights under section 211.447.5(2). *See also J.A.R., 426 S.W.3d at 631* (affirming termination of parental rights based on neglect under section 211.447.5(2) when a parent failed to provide children with letters, maintained contact with children only through irregular telephone calls, and failed to provide financial support despite being able to do so); *In re M.W.S., 160 S.W.3d 435, 438 (Mo. App. 2005)* (clear, cogent, and convincing evidence of neglect existed when parent had a diagnosis of mild mental retardation with longstanding history of limited cognitive abilities and was unlikely to improve); *In re L.M., 212 S.W.3d 177, 184-85 (Mo. App. 2007)* (affirming termination of parental rights under section 211.447.5(3) of parent with schizoaffective disorder of the bipolar type who would need assistance at all times because of his cognitive disabilities); *In re L.N.D., 219 S.W.3d 820, 827-28 (Mo. App. 2007)* (termination under section 211.447.5(2) upheld when the father gave only a "few gifts of clothing and toys," visitation was sporadic, he did not give letters, cards, or gifts, and made no efforts to keep apprised of his child's well-being).

Additionally, the circuit court found by a preponderance of the evidence that termination of Mother's parental rights was in the twins' best interests. It found the twins have no emotional ties to Mother because she was inconsistent in her visits or failed to attend them altogether. When she did attend visits, Mother was overwhelmed.

Mother's minimal contact with the twins evidenced a lack of interest in them. Mother failed to provide the cost of care and maintenance for the twins despite being financially able. Finally, no additional services were available to be offered to Mother beyond those already provided. The record supports these findings, and Mother does not challenge that termination is in the best interests of the twins.

Because Mother's parental rights were properly terminated by sufficient evidence of neglect under section 211.447.5(2) and termination is in the twins' best interests, Mother's consent to adoption is not required pursuant to section 453.040(8).[7] It is not contested that the record supports adoption under section 453.040 if termination was proper.

## IV. CONCLUSION

Clear, cogent and convincing evidence supported the circuit court's termination of parental rights under section 211.447.5(2). Mother's consent was not required because her rights properly were terminated on a ground set out in section 211.447.5. Adoption is in the twin's best interests. The circuit court's judgment terminating Mother's parental rights and approving the adoption of the twins by the foster parents is affirmed.

All concur.

---

7. Although the petition did not mention section 453.040(8), it did so in effect by alleging grounds under section 211.447.5 for terminating parental rights. Subsection (8) makes this a basis for not requiring consent for adoption, because a parent whose rights have been terminated is no longer considered a parent and so has no say as to whether the child should be adopted. Here, because the circuit court found Mother's parental rights were terminated under section 211.447.5(2) for neglect, Mother's consent for adoption was not required.